AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

ISAAC TEKOLA,

Defendant.

Case No. 2:22mj4818-duty

**LODGED**
CLERK, U.S. DISTRICT COURT
12/9/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: jb   DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
12-9-22
CENTRAL DISTRICT OF CALIFORNIA
BY: NNE   DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 16, 2022, in the county of Santa Barbara in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Michael E. Johnson
Complainant's signature

Michael E. Johnson, DEA Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 9, 2022

Judge's signature

City and state: Los Angeles, California     Hon. Maria A Audero, U.S. Magistrate Judge
Printed name and title

AUSA: Kellye Ng-McCullough, (213) 894-8408

**AFFIDAVIT**

I, Michael E. Johnson, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Isaac Tekola ("TEKOLA") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been employed as such since January 2019. I am currently assigned to the Ventura Resident Office and have been so assigned since March 2019. Before my current assignment, I attended the DEA Academy in Quantico, Virginia, for approximately four months. Before my employment with the DEA, I was an Infantry and Intelligence Officer in the United States Army for approximately six years.

4. During the course of my employment with DEA, I have received several hundred hours of training in various investigative techniques, including specialized training in the recognition and processing of controlled substance identification, the methods and means of narcotics violators, narcotics packaging, narcotics paraphernalia and terminology, narcotics prices, field testing of narcotics, interview and interrogation techniques, surveillance techniques, undercover operations, confidential source management, and other investigative techniques. I have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, methods used to finance drug transactions, methods of distribution, and movement of drug proceeds. I am familiar with narcotics traffickers' methods of operations, including the distribution, storage, and transportation of narcotics and the collection of monetary narcotics proceeds. I am also familiar with methods employed by drug trafficking organizations to thwart detection by law enforcement, involving cellular telephone technology, mobile applications, electronic messenger/messaging systems, voice over internet phone technology, counter surveillance, encrypted devices, and coded communications.

5. During my employment with DEA, I have used a variety of investigative techniques while conducting investigations. I have debriefed defendants and informants who had personal knowledge regarding narcotics trafficking organizations and the methods in which these organizations operate. I have also

participated in various aspects of these investigations, as both a case agent and in a supportive role, including making and directing controlled purchases of narcotics, conducting physical and electronic surveillance, using informants and cooperating sources, executing search warrants, executing arrest warrants, participating in consensual searches, and installing and utilizing electronic recording devices.  I have also participated in investigations in which I have used Global Positioning System information to locate and track persons who are the subjects of criminal investigations, telephone toll analysis, and wire/electronic intercept communications analysis.

### III. SUMMARY OF PROBABLE CAUSE

6.  On September 15, 2022, TEKOLA sold George SILVA ("SILVA) five suspected fentanyl pills, cocaine, and approximately five white pills.  That same day, SILVA sold Charles Jordan GOODIE ("GOODIE") the five suspected fentanyl pills.  Thereafter, on the same day, GOODIE provided at least one-half of one of the suspected fentanyl pills to A.M.  In the early morning hours of September 16, 2022, A.M. died of a suspected fentanyl overdose in Goleta, California.

7.  Later on September 16, 2022, Santa Barbara Sheriff's Office ("SBSO") deputies executed a state search warrant at TEKOLA's home in Santa Barbara, California.  In TEKOLA's bedroom, SBSO deputies found approximately 458.1 grams of cocaine, approximately 687 counterfeit Oxycodone pills containing approximately 72.8 grams of fentanyl, at least 374 counterfeit Adderall pills containing approximately 5.1 grams of

pure methamphetamine, 11 bottles of "Farmapram" (Xanax) pills containing approximately 81.15 grams of alprazolam, approximately 800 grams of cannabis flower, approximately $13,000 in cash, an apparent pay-owe sheet, baggies, a food saver vacuum sealer, multiple scales with white residue, and a black-colored iPhone 7 with no case.  Deputies found a light-colored iPhone 12 with no case on TEKOLA's person on September 16, 2022.

### IV. STATEMENT OF PROBABLE CAUSE

8.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

    **A.   On September 16, 2022, A.M. Died From a Suspected Fentanyl Overdose**

9.   According to SBSO Detective Robert DeBarge's residential and phone warrant affidavits, on September 16, 2022, at approximately 6:50 a.m., SBSO Detective Robert DeBarge received a phone call about a possible fentanyl overdose death in Goleta.  The victim was A.M., a 36-year-old male.

10.  Later that morning, Detective DeBarge arrived at the victim's home and spoke with the victim's girlfriend, T.K.  According to the recorded interview and Detective Debarge's affidavits summarizing that interview, T.K. told Detective DeBarge the following:

    a.   On September 15, 2022, A.M. went golfing and had been drinking alcohol.  After golfing, A.M. went to Charles Jordan GOODIE's ("GOODIE") home.  Because A.M. and GOODIE had

been drinking alcohol, A.M. was too intoxicated to drive home. GOODIE called T.K. to pick up A.M. T.K. drove to GOODIE's home and transported A.M. back home.

      b.   On September 16, 2022, at about 4:00 a.m., A.M. woke up after the alcohol wore off and asked what happened the night before. At some point, A.M. spoke on the phone to GOODIE.

      c.   A.M. told T.K. that he had gotten "half a blue" from GOODIE and showed it to T.K. T.K. described the pill as circular, cut in half, and blue.[1]

      d.   A.M. went to the kitchen counter, crushed up the pill, and snorted it off the counter. A.M. came back to bed and went back to sleep.

      e.   Just before 6:00 a.m., T.K. noticed that A.M.'s breathing sounded like he was snoring. While T.K. at first did not think anything of A.M.'s snoring, as A.M. typically snored, T.K. eventually became concerned and called 911.

11. Sometime shortly after 6:00 in the morning, paramedics arrived at A.M.'s home. They attempted lifesaving measures on A.M., which were unsuccessful. At 6:29 in the morning, A.M. was pronounced deceased.

12. That same day, deputies recovered a black-colored iPhone 12 with a black case from the kitchen counter at A.M.'s home. The iPhone 12 belonged to A.M.

---

[1] Based on my training and experience, I know that fentanyl is often contained in counterfeit Oxycodone pills, which are distributed as round blue pills in order to mimic the appearance of legitimate Oxycodone pills.

13.   On September 16, 2022, the Santa Barbara County Sheriff's Office's Coroner's Bureau conducted a urinalysis of A.M. and detected the presence of fentanyl and cannabinoids in A.M.'s system.

**B.   On September 15, 2022, SILVA Sold Suspected Fentanyl Pills to GOODIE and A.M.**

14.   Later on the morning of September 16, 2022, Detective DeBarge spoke with A.M.'s brother, I.M.  According to Detective DeBarge's affidavit summarizing that interview, I.M. told Detective DeBarge that I.M. had called GOODIE and informed him that A.M. passed away.  GOODIE was in the Los Angeles area cleaning pools and had been driving A.M.'s charcoal grey Jeep Cherokee ("the Jeep").  GOODIE told I.M. that he was on his way back to Goleta.

15.   SBSO dispatch identified GOODIE's home as in Goleta, California.  SBSO deputies established surveillance at GOODIE's home.  According to SBSO reports, at approximately 9:43 a.m. on September 16, 2022, GOODIE arrived at his home in the Jeep.  Detectives detained GOODIE and asked to question him at the SBSO station.  GOODIE agreed.  An SBSO deputy drove GOODIE to the SBSO headquarters.

16.   According to Detective DeBarge's affidavits, SBSO Sergeant Neil Gowing told GOODIE that he was not under arrest and that he was just being detained.  When Detective DeBarge arrived at the interview room, GOODIE was not handcuffed and had a cup of water in front of him.  GOODIE agreed to speak with

SBSO detectives, but asked to go outside to get some fresh air. SBSO detectives agreed to speak with GOODIE outside.

17. According to a recorded interview, Detective DeBarge informed GOODIE that he was not under arrest and Mirandized GOODIE before asking him any questions. According to a recorded interview, GOODIE agreed to speak with the detectives and told them the following:

    a. On September 15, 2022, at approximately 4:00 p.m., A.M. arrived at GOODIE's home. A.M. told GOODIE about A.M.'s recent relapse into using pills. A.M. spoke with various people on the phone while at GOODIE's home.

    b. GOODIE and A.M. went to a local grocery store to buy wine. GOODIE and A.M. returned to GOODIE's home, where A.M. drank an entire bottle of wine.

    c. At first, GOODIE said that a Hispanic male named "George" (later identified as SILVA) arrived at GOODIE's home and sold A.M. a small amount of "round blue" pills. GOODIE initially told detectives that he received two or three pills from A.M. during that deal.[2] GOODIE described SILVA as a Hispanic male, in his 30s, whom GOODIE had previously seen drive a white or silver Toyota or Honda.[3] GOODIE initially said that "George" came into GOODIE's home, conducted the transaction very quickly with A.M., and then left.

---

[2] GOODIE later admitted to purchasing the pills from "George" (SILVA) himself.

[3] SILVA actually drove a gray Nissan Sentra.

  d. GOODIE said that neither he nor A.M. ingested any of the pills while at GOODIE's home. Because of A.M.'s intoxicated state, GOODIE called T.K. to pick A.M. up. At approximately 7:30 or 8:00 p.m., T.K. picked up A.M. from GOODIE's home.

  18. According to Detective DeBarge's phone search warrant affidavit, GOODIE initially told Detective DeBarge that he did not provide A.M. with the half pill. GOODIE admitted to having one to two pills inside of his home, with at least one of them inside of his bedroom.

  19. That same day, September 16, 2022, deputies transported GOODIE back to his home in Goleta, California. Later on September 16, 2022, deputies obtained and executed a state search warrant to search GOODIE's home, and deputies found two blue "oxycodone" pills inside of GOODIE's home, which were stamped with "M" on one side and "30" on the other side.[4]

  20. SBSO deputies canvassed the neighborhood surrounding GOODIE's home and learned that one of the neighbors took a photograph of a suspected drug transaction outside of GOODIE's home on September 15, 2022, at about 6:30 p.m.

  21. The neighbor provided deputies the photograph. Based on my review of the photograph, it shows SILVA in the driver's seat of a gray Nissan Sentra parked alongside the curb while SILVA interacted with GOODIE, who was standing just outside the driver's side door of the Nissan Sentra.

---

[4] Subsequent laboratory testing of one of the blue pills found in GOODIE's home confirmed the presence of approximately 0.113 grams of fentanyl.

22. Later on September 16, 2022, after GOODIE's initial interview described above, an SBSO detective showed GOODIE the photograph and asked him about it. GOODIE admitted that on September 15, 2022, "George" (SILVA) sold GOODIE four "oxycodone" pills for $100. GOODIE admitted that GOODIE himself was depicted in the photograph buying the M30 "oxycodone" pills from "George," and identified "George" in the photograph. A cropped and zoomed-in image of the transaction revealed that SILVA drove a gray Nissan Sentra bearing the license plate 8JWL564, registered to "George Armando Silva" at 4854 Payton Street, Santa Barbara, CA 93111.

23. Pursuant to a state search warrant, deputies found a blue-colored iPhone 13 Pro with a clear case in A.M.'s Jeep parked outside of GOODIE's home, which GOODIE had been driving on September 16, 2022. The blue-colored iPhone 13 had a telephone number (805) 453-1703, and was subscribed to Charles Goodie.

24. GOODIE admitted that the blue-colored iPhone 13 Pro belonged to him.

25. After deputies seized the blue-colored iPhone 13 Pro, GOODIE admitted that he deleted drug-related text messages and calls on his phone.

  **C. TEKOLA Provided the Suspected Fentanyl Pills that SILVA Sold to GOODIE and A.M., and Also Sold Cocaine and Purported Adderall**

26. Based on the photograph taken of GOODIE and SILVA's drug transaction on September 15, 2022 and SILVA's license plate, SBSO detectives ran a records check for SILVA and found

two addresses associated with him in Santa Barbara, California: 4854 Payton Street (the "Payton Street Residence") and 4834 San Gordiano Avenue, #C (the "San Gordiano Residence"). SILVA's driver's license was registered at the Payton Street Residence. Detectives conducted surveillance at the two addresses and identified the same Nissan Sentra parked outside of the San Gordiano Residence.

27. That same day, detectives obtained a state search warrant for both the Payton Street Residence and the San Gordiano Residence. SBSO deputies executed the search warrant at the San Gordiano Residence.[5] According to an SBSO report, deputies detained SILVA as he was departing the San Gordiano Residence in the Nissan Sentra with another individual driving.[6] Deputies found a black-colored iPhone 13 Pro with a black case in SILVA's Nissan Sentra. SILVA admitted that the black-colored iPhone 13 Pro with a black case belonged to him.

28. Deputies transported SILVA to SBSO's station. Deputies Mirandized SILVA. There, according to Detective DeBarge's residential search warrant affidavit, SILVA agreed to speak with Detective DeBarge and Sergeant Gowing. Following the initial interview, shortly after, SILVA again agreed to speak, this time with Detective DeBarge and Detective James Furber.

---

[5] Deputies did not execute the search warrant at the Payton Residence because upon contacting SILVA outside of the San Gordiano Residence, deputies identified that SILVA lived at the San Gordiano Residence and not the Payton Street Residence.

[6] The state search warrant affidavit for TEKOLA's home states that the warrant for SILVA's home was executed as Silva was getting into a vehicle waiting to pick him up and he was detained.

According to the recorded interviews, while SILVA was not initially forthcoming about his relationship with GOODIE or A.M., SILVA ultimately told law enforcement the following:

    a. After being confronted with the photograph depicting SILVA outside of GOODIE's home on September 15, 2022, SILVA admitted to providing five M30 pills to GOODIE for $125. SILVA admitted that he was providing the drugs as a favor to GOODIE and said he had only provided drugs to GOODIE on a few occasions.[7] SILVA confirmed that he provided the drugs to GOODIE, but denied providing them to A.M., whom SILVA described as "hammered" and "blacked out" (intoxicated).

    b. SILVA said that he obtained the five M30 pills from TEKOLA. SILVA said that TEKOLA's address was 811 Tye Road, Santa Barbara, California and identified TEKOLA's home on a map. SILVA said that TEKOLA drove a blue Prius.

    c. SILVA said that he knew TEKOLA for approximately four years and had been buying drugs from TEKOLA during that period of time, including Adderall, "blow" (which I understand to be a reference to cocaine), and "blues" (which I understand to be a reference to counterfeit Oxycodone pills, often referred to as "M30s").

29. According to Detective DeBarge's residential search warrant affidavit, SILVA signed a consent form authorizing law

---

[7] The state search warrant affidavits for TEKOLA's, SILVA's, and GOODIE's homes contain a typographical error, which mistakenly states: "SILVA admitted that he was doing it as a favor to SILVA." However, Detective DeBarge clarified that the affidavit should have read, "SILVA admitted that he was doing it as a favor to **GOODIE**." SILVA's recorded interview corroborates that SILVA meant that he was doing a favor for GOODIE.

enforcement to search his cell phone and went through his text messages with Detective Furber, which contained several messages in which TEKOLA arranged to sell blue M30 pills to SILVA.[8]

30. Law enforcement officers obtained a state search warrant to search the Payton Street Residence and the San Gordiano Residence, and in the San Gordiano Residence, found approximately 0.78 grams of cocaine (net weight) and five unknown white pills.[9] SILVA admitted that the drugs found in his home on September 16, 2022 were the cocaine and purported Adderall that he purchased from TEKOLA on September 15, 2022. Subsequent DEA laboratory testing confirmed SILVA had approximately 0.78 grams (net weight) of cocaine. Subsequent DEA laboratory testing confirmed that the five unknown white pills contained no controlled substances.

31. Also on September 16, 2022, according to an SBSO report, an SBSO detective drove by 811 Tye Road and saw a blue Prius parked across the street bearing license plate 6KCW213. A records check of the blue Prius showed that it was registered to Abrham Tekola.[10] The detective also saw another BMW on the

---

[8] While SILVA admitted that he called TEKOLA to coordinate the sale for the five M30 pills, cocaine, and Adderall on September 15, 2022, SILVA's phone did not show text messages with TEKOLA specific to the September 15, 2022 sale.

[9] As noted in paragraph 27, footnote 5, deputies did not execute the search warrant at the Payton Street Residence.

[10] Abrham is TEKOLA's middle name.

street bearing license plate 7BTP902. A records check revealed that the BMW was registered to TEKOLA at 811 Tye Road.[11]

### D. TEKOLA Possessed Counterfeit Oxycodone Pills, Counterfeit Adderall Pills, Purported Farmapram (Xanax), Cocaine, Cannabis Flower, Packaging Material, Scales, a Pay-Owe Sheet, Cash, and a Black-Colored iPhone 7 with No Case in His Bedroom

32. Later on September 16, 2022, SBSO detectives obtained a state search warrant to search TEKOLA's home at 811 Tye Road in Santa Barbara, as well as any cars under TEKOLA's control.

33. SBSO detectives executed the warrant that day. When they arrived, TEKOLA's roommate, Nicolas CROSS ("CROSS"), answered the door. In an un-Mirandized, recorded interview at the residence, CROSS told SBSO deputies that TEKOLA sold cocaine. Deputies found three plastic baggies of suspected cocaine in CROSS's bedroom.[12] CROSS said he bought the cocaine from TEKOLA, and showed the deputies text messages on CROSS's phone in which CROSS asked TEKOLA on September 3, 2022, "[ca]n I get a ball when you get a chance," to which TEKOLA replied, "Yeah . . . I have weed now too." CROSS also showed deputies another exchange of text messages from September 11, 2022, in

---

[11] The state search warrant for TEKOLA's home and cars under his control stated that, "[a]t approximately 1811 hours, detectives were conducting surveillance on 811 Tye Road and observed a black Toyota Camry . . . arrive at the residence. The vehicle only stayed for approximately 2 minutes and then left. This is consistent with a narcotics transaction in my opinion as a narcotics dealer." After interviewing TEKOLA's roommate, Nicolas Cross, on September 16, 2022, SBSO now understands that the Camry's driver was likely a food delivery service provider.

[12] Subsequent DEA laboratory testing confirmed that the three plastic baggies contained approximately 2.82 grams of cocaine (net weight).

which CROSS asked TEKOLA, "[c]an I get a ball tonight when I get home," to which TEKOLA responded, "Ya. when you coming back ?" Based on my training and experience, I understand "a ball" to mean an eighth of an ounce of cocaine.

34. According to an SBSO report, when executing the search warrant, Detective Furber was in the hallway calling for TEKOLA to come out of his bedroom, which was in the far back left room of the hallway. Approximately two minutes later, TEKOLA emerged from his bedroom. Deputies found a light-colored iPhone 12 with no case on TEKOLA's person on September 16, 2022.

35. According to an SBSO report, when detectives searched TEKOLA's bedroom, they found in TEKOLA's closet, closet safe, and desk drawer approximately half a kilogram (including packaging) of a substance that field-tested positive for cocaine.[13] Also in TEKOLA's closet, detectives found approximately 687 round blue pills marked "M30," which based on my training and experience, I believe are counterfeit Oxycodone pills made to look like legitimate pharmaceuticals. Subsequent DEA laboratory testing confirmed that the approximate 687 pills contained approximately 72.8 grams of fentanyl. Also in TEKOLA's bedroom, detectives found four plastic bags with at least 374 counterfeit Adderall pills , which field-tested positive for methamphetamine.[14] Also in TEKOLA's bedroom,

---

[13] Subsequent DEA laboratory testing confirmed approximately 458.1 grams of cocaine (net weight).

[14] Subsequent DEA laboratory testing confirmed that the approximate 374 counterfeit Adderall pills contained approximately 5.1 grams of pure methamphetamine.

detectives found baggies, Food Saver packaging material, approximately 800 grams of cannabis flower, and an apparent pay-owe sheet. In an open safe in TEKOLA's closet, deputies found 10 bottles of what appears to be Farmapram (Xanax) pills, one 9mm round of ammunition, and approximately $7,250 in cash. In TEKOLA's desk drawers, detectives found multiple scales with white residue, $5,608 in cash, and one additional bottle of what appeared to be Farmapram (Xanax).[15] In TEKOLA's bedroom on top of the desk, detectives found a black-colored iPhone 7 with no case. Detectives also found mail packages with TEKOLA's name in the same bedroom.

## V. CONCLUSION

36. For all of the reasons described above, there is probable cause to believe that TEKOLA has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __9th__ day of __December__, 2022.

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

---

[15] Subsequent DEA laboratory testing of the Farmapram pills found in TEKOLA's bedroom confirmed approximately 81.15 grams of alprazolam.